William T. MYERS, Plaintiff,

v.

PENSION FUND, LOCAL ONE AMALGAMATED LITHOGRAPHERS OF AMERICA, John Conlon, Secretary, Board of Union Pension Trustees, Defendants.

No. CV 88–1123.

United States District Court, E.D. New York.

Jan. 27, 1989.

William T. Myers, Huntington, N.Y., pro se.

Robinson, Silverman, Pearce, Aronsohn & Berman by Andrew Irving, New York City, for defendants.

MEMORANDUM AND ORDER

WEXLER, District Judge.

The present action arises out of defendant-Pension Fund's (the "Fund") determination that plaintiff is not entitled to a monthly pension, but rather a withdrawal benefit. Based on the Employee Retirement Income Security Act 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), the Sherman Antitrust Act, 15 U.S.C. § 1, and § 340 of Article 22 General Business Law of New York State, plaintiff challenges the Fund's determination. Both sides move for summary judgment.

## FACTS

In 1947, defendant Local One Amalgamated Lithographers of America ("Local One") established the Fund. The Fund enables workers to save for their retirement by contributing a percentage of their earnings to a trust which is invested to provide pension benefits.

From 1947—1973 plaintiff contributed his wages to the Fund. In 1973 he informed the Fund that he was leaving the lithographic industry.

Section 18.03(e) of the Fund's by-laws provides that a member loses eligibility for membership in the Fund if he either ceases to be a member of Local One or leaves the lithographic industry.

In either case, the member may apply for a *withdrawal benefit* amounting to a lump sum payment of one-half of his accumulated contribution plus 2% interest.

However, if the loss of membership occurs due to leaving the lithographic industry (as opposed to remaining in the industry but leaving Local One) a second option is available. The individual may "vest" his pension which enables him to become eligible for a monthly pension when reaching the appropriate age.

Only those who leave the lithographic industry can avail themselves of the vesting option. Accordingly, Section 18.03(c) of the Fund's by-laws provides that a member who chooses the vesting option but later returns to the lithographic industry must notify the Fund, apply for reinstatement, and resume contributions in order to preserve his monthly benefits. Failure to do so disqualifies the individual from the vesting option, and only permits the receiving of a withdrawal benefit.

When plaintiff left the industry in 1973, he chose the vesting option rather than take a withdrawal benefit.

On September 14, 1973, the Trustees of the Fund ("Trustees") approved plaintiff's application for a vested pension. In that same letter, the Trustees informed plaintiff of the consequences of becoming reemployed in the lithographic industry:

As long as you remain outside the lithographic industry you will remain eligible to receive the above indicated Pension at the date stipulated above, and you will also be eligible for the Death Benefit provided by the Fund.

If you should become re-engaged in the lithographic industry, the by-laws require that you notify the Fund's office in writing immediately, re-apply for membership and resume contributions to the Fund. This is very important, as your failure to comply may result in your loss of the Pension and Death Benefits.

In September 1986, plaintiff contacted the Fund about receiving his vested pension. In response, the Fund sought and received plaintiff's employment records from the Social Security Administration. The records indicate that since 1973 plaintiff had been employed by Towanda Printing Company ("Towanda") and American Silk Label Manufacturing ("ASL").

Although the Fund did not investigate whether Towanda or ASL are part of the lithographic industry, the Trustees assumed that since most label manufacturing is printed through the lithographic process, ASL must be part of the lithographic industry.

The Trustees concluded that since plaintiff failed to notify the Fund of his reemployment in the industry, did not resume his contributions, nor apply for reinstatement, plaintiff was no longer eligible for the vesting option but could only receive the withdrawal benefit.

On April 13, 1986 Mr. Myers stated by letter that he was not involved in lithographic work because he was working in shipping and receiving. However, Mr. Myers did not state whether Towanda or ASL were part of the lithographic industry. The Fund claims that it has consistently applied its by-laws to hold that *any employment* in the lithographic industry, whether or not in a lithographic production capacity, requires a fund participant to rejoin the Fund and resume contributions; plaintiff does not contest this allegation. *See* Affidavit of Joseph Cincotta. Therefore, by letter the Fund reiterated that Mr. Myers was only entitled to a withdrawal benefit.

The affidavits which Mr. Myers submits to the Court indicate that ASL is *not part of the lithographic industry. See* Affidavits of Harold Spencer and Sheldon Greiss. However, this information was never presented to the Fund when it decided Mr. Myers' application. Moreover, Mr. Myers has not submitted any affidavits to show whether or not Towanda is part of the lithographic industry.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff argues for summary judgment based on several alternative theories. The Court will deal with each one separately.

## NEW YORK GENERAL BUSINESS LAW

■ Plaintiff asserts that his disqualification from a monthly pension violates Section 340 of the General Business Law of the State of New York which renders void as against Public Policy every "contract, agreement, arrangement or contribution whereby ... the free exercise of any activity and the conduct of any business, trade or commerce in the furnishing of any service in this state is or may be restrained."

However, ERISA preempts Section 340 of New York General Business Law. Section 514(a) of ERISA, 29 U.S.C. Section 1144(a), provides that ERISA shall "supercede any and all state law, insofar as they may now or hereafter relate to any employee benefit plan." The Supreme Court has interpreted this provision broadly, and has held that state laws which attempt to regulate employee benefit plans are preempted. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

By relying on Section 340, plaintiff attempts to invalidate under state law an otherwise valid rule under ERISA. However, the ERISA preemption provision prevents this result. *See Shaw, supra.*

## ANTITRUST VIOLATION

■ Based on the antitrust laws, plaintiff challenges the Fund's rules which define benefits for those who leave the lithographic industry or who leave Local One.

However, as an employee benefit fund affiliated with a union, which can only use its assets for the benefit of employees, the Fund is exempt from the antitrust laws. *See United States v. Hutcheson,* 312 U.S. 219, 232, 61 S.Ct. 463, 466, 85 L.Ed. 788 (1941); *Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees,* 553 F.Supp. 303, 307 (S.D.N.Y.1982), *aff'd on other grounds,* 717 F.2d 726 (2d Cir.1983).

## ERISA

■ Plaintiff alleges that the Fund's refusal to grant the monthly pension which vested in 1973 constitutes a violation of ERISA vesting provisions.

Those provisions appear in two places. First, ERISA § 203, 29 U.S.C. § 1053 sets forth minimum vesting requirements. However, these vesting provisions do not apply to a trust described in § 501(c)(18) of the Internal Revenue Code. *See* ERISA § 201(3)(B), 29 U.S.C. § 1051(3)(B).

The Fund is a § 501(c)(18) trust and, therefore, § 203 of ERISA does not apply. *See* Exhibit 1 attached to Defendant's Affidavit of Joseph Cincotta.

Vesting rules also appear in § 411 of the Internal Revenue Code, 26 U.S.C. § 411. However, these rules only apply to "qualified trusts" as defined in § 401(a) of the Internal Revenue Code. The Fund is not a qualified trust and, therefore, the Fund

need not comply with the requirements of § 411.

Therefore, plaintiff's motion for summary judgment is denied.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

■ In arguing for summary judgment, defendant asserts that the Fund has correctly complied with its own rules, and did not act in an arbitrary and capricious manner.

The scope of judicial review from a fund's denial of benefits is severely restricted. The only question before a reviewing court is whether the trustees acted arbitrarily, capriciously, or in bad faith. *Miles v. New York State Teamsters Conference Pension Plan,* 698 F.2d 593 (2d Cir.1983).

A federal court cannot hold a *de novo* hearing but can only ascertain whether the Fund's decision was based on substantial evidence. *Miles v. New York State Teamsters Conference Pension Plan, supra.; Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980).

Nevertheless, in this case plaintiff presents supporting evidence to this Court which was not submitted to the Trustees. The Trustees denied plaintiff benefits because they assumed that ASL is part of the lithographic industry. At that time, plaintiff presented no evidence to the contrary.

However, now plaintiff presents to this Court affidavits which indicate that ASL is not part of the lithographic industry.

Plaintiff presents no evidence concerning whether Towanda is part of the lithographic industry. However, the Trustees made no determination concerning the Towanda employment because they relied solely on plaintiff's ASL employment.

When new evidence supporting the claimant's position is presented to the court which was not presented to the trustees who denied the claim, several courts of appeals have decided that the proper remedy is to remand the case to the trustees. *See Wardle, supra; LeFebre v. Westing-*

*house Electric Corp.,* 747 F.2d 197, 204 (4th Cir.1984).

Although the Second Circuit has not dealt specifically with this issue, the Court feels that a remand is the proper remedy. In this case, such a remedy intrudes minimally upon the Trustees' decisionmaking process, and does not contradict the policy of restricting judicial review over pension funds. The Trustees need only determine whether ASL or Towanda are part of the lithographic industry.

### CONCLUSION

Given the new evidence presented by the plaintiff, the Court remands this case back to the Trustees of the Fund to determine whether ASL or Towanda are part of the lithographic industry.

SO ORDERED.